UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| beIN MEDIA GROUP LLC, <br><br> Plaintiff, <br><br> v. <br><br> bein.ae, bein.hk, bein.jp, bein.work and bein.xyz, <br><br> Defendants *in rem*. | Case No.: 3:18-cv-1042-CAB-(MDD) <br><br> **ORDER ON MOTION FOR DEFAULT JUDGMENT** <br> **[Doc. No. 18.]** |

This matter is before the Court on Plaintiff's Motion for Default Judgment. [Doc. No. 18.] Upon consideration of the pleadings, the motion, and Defendants' lack of opposition to the motion, the motion is granted in part.

**I.     BACKGROUND**

Plaintiff beIN Media Group ("beIN") is a media, cable and satellite broadcast company which represents sports related programming on major cable programs and owns the trademark to "BEIN." On May 24, 2018, Plaintiff filed this *in rem* action against defendant domain names <bein.ae>, <bein.hk>, <bein.jp>, and <bein.xyz> (collectively "the <bein._>domain names") under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). [Doc. No. 1.] Plaintiff also filed two additional actions in other courts *beIN Media Group LLC. v. bein.com et al.*, 1:18-cv-11061-DJC (D. Mass,

filed May 21, 2018) and *beIN Media Group LLC v. bein.qa*, 1:18-cv-00794-GMS (D. Del., filed May 24, 2018). [Doc. No. 18-1 at 2.]

On May 30, 2018, Plaintiff filed a first amended complaint ("FAC") for violation of the ACPA which adds the domain name <bein.work> as a defendant. [Doc. No. 5.] The FAC asserts that the registrant of the defendant domain names is Mr. Honza Jan Zicha ("Zicha") with an address listed in the United Kingdom. [*Id.* at ¶¶ 7, 10.]

Plaintiff asserts that it owns several registered U.S. Trademarks to the word mark "BEIN" in different classes of goods and services. [*Id.* at ¶¶ 14-18.] Plaintiff alleges it has used the BEIN marks extensively to indicate the source of, and to promote, its global source and entertainment services, thereby growing its audience to 55 million paid subscribers, broadcasting over 7,500 hours of live content per month across 43 countries, 3 continents, and 60 channels. [*Id.* at ¶ 19.] Further, Plaintiff alleges that Zicha has registered and continues to renew the registration of the <bein._> domain names to wrongfully profit from the goodwill and reputation of beIN and its distinctive marks. [*Id.* at ¶¶ 21-27.] Further it is alleged that Zicha is using the <bein._> domain names "in bad faith by making unreasonable demands on beIN and is threatening to sell the domains to a broadcast pirate." [*Id.* at ¶¶ 3, 28-34.] Zicha is not named as a defendant in this case.

Plaintiff served Defendants with the FAC and summons on May 31, 2018. [Doc. Nos. 6, 8.] Shortly after the complaints in all three of actions were filed Zicha contacted beIN and the parties agreed to settle.[1] [Doc. No. 18-1 at 2.] As part of the settlement agreement Zicha agreed to transfer and assign all the <bein._> domain names to Plaintiff. [Doc. No. 18-1 at 9.]

On July 12, 2018, at the request of the parties, the Court ordered the registrar of the domain names to lift the registrar lock on the domain names and to transfer the domain

---

[1] The Massachusetts court enforced the settlement agreement, yet Zicha has not complied with its terms and the district court has entered judgment in favor of beIN. [*See* Doc. No. 18-2, Chandler Decl., ¶¶ 4, 6-7 Exs. 5-7; pages 99-100.]

2

names <bein.ae>, <bein.hk>, <bein.jp>, <bein.work>, and <bein.xyx> to Plaintiff. [Doc. No. 11.] Subsequently, the Court issued an Order to Show Cause why the case should not be dismissed. [Doc. No. 12.] Plaintiff's response informed that after initially stipulating to the transfer of the domain names, Zicha reneged on the remainder of the settlement agreement reached between the parties to fully resolve this dispute. [Doc. No. 13; Doc. No. 18-1 at 2.] Accordingly, on September 19, 2018, the Court discharged the OSC. [Doc. No. 14.]

On October 1, 2018, following the issuance of the Court's order, the Court received a Notice of Appearance and exhibits from Zicha. [Doc. No. 15.] However, since the filing of these documents, the Court has received no further correspondence from Zicha.

On November 2, 2018, Plaintiff filed a Request for Entry of Default against Defendants [Doc. No. 16] and submitted a Bill of Costs [Doc. No. 17]. On November 5, 2019, the Clerk entered default against Defendants. [Doc. No.19.] Plaintiff seeks default judgment because Zicha has refused to cooperate in the entry of judgment, requests an award of $10,000 in statutory damages, costs in the amount of $765.20, and reasonable attorneys' fees in the amount of $7,363.13, for a total judgment of $18,128.33. [Doc. No. 18.] Plaintiff contends that entry of final judgment is an agreed term under the settlement agreement and is also necessary to allow it to pursue enforcement of the judgment wherever Zicha may have assets. [Doc. No. 18-1 at 5.] On January 4, 2019, Plaintiff filed a Notice of Failure to Oppose. [Doc. No. 23.]

**II.     Discussion**

The Court begins by noting that the request for entry of default is somewhat lacking. While affidavits were filed attesting to the behavior of Zicha, and requests this Court enter a judgment against Zicha personally, Zicha is not a party to this case, and the settlement agreement that Plaintiff now seek the Court declare Zicha is in breach of is not at issue in this case. Further, Plaintiff ignores the fact that it is bringing this action *in rem* and the jurisdictional inquiry that must follow. Moreover, aside from addressing the merits of its

substantive claim, Plaintiff's application fails to address any of the other *Eitel* factors that a district court in this circuit must consider before entering default.

### A. Jurisdiction under the ACPA

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977). Additionally, "[w]hen entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq,* 172 F.3d 707, 712 (9th Cir. 1999).

To bring an *in rem* action under the ACPA a plaintiff must prove, and the court must find, that the owner, is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in an *in personam* jurisdiction under the act. *See* 15 U.S.C. § 1125(2)(d)(2)(A)(i)-(ii)(I). A court may also allow an *in rem* action to proceed upon finding that a mark owner "through due diligence was not able to find a person who would have been a defendant in a civil action" by sending a notice of the alleged violation to the registrant of the domain name at the postal and email address provided to the registrar, and publishing notice of the action as the court directs. *Id.* § 1125(2)(d)(2)(A)(ii)(II). Further the ACPA provides that service of process can be accomplished in an *in rem* action if the court finds that there is no *in personam* jurisdiction and the plaintiff undertakes the notice requirements of §1125(d)(2)(A)(ii)(II).

Thus, to establish *in rem* jurisdiction here, Plaintiff must allege that the domain names <bein.ae>, <bein.hk>, <bein.jp>, <bein.work>, and <bein.xyx> violate any right it has in a mark registered with the Patent and Trademark Office, or protected under 15 U.S.C. § 1125(a) or (c). *Id.* at §1125(d)(2)(A)(i). Plaintiff must also show that it was unable to obtain personal jurisdiction over Zicha, the individual who would otherwise have been a defendant in a civil action under the ACPA. *Id.* at §1125(d)(2)(A)(ii). In other words, *in rem* jurisdiction may be appropriate, even though Zicha is the known domain name holder, if Plaintiff demonstrates for example that Zicha is located in another country.

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition § 25A:74* (4th ed. 2017).

Here, Plaintiff was able to locate the registrant of the defendant domains, Zicha, who resides in the United Kingdom. [Doc. No. 5 at ¶ 4, 7.] It is also alleged, on information on belief, that Zicha owns no property in, owns no places of business in, is not registered to do business in, and is not a resident of California or any other State. [*Id.* at ¶ 11.] Further, it is alleged that the domains' registrar, 101domain GRS Limited is located in this district at 3220 Executive Ridge Drive, Suite 101, Vista, CA 92081. [*Id.* at ¶¶ 4, 7, 9.] Because Zicha, the registrant of the <bein._> domain name resides in the United Kingdom and does not appear to have any ongoing business activities in the United States, Plaintiff has established that it is unable to obtain personal jurisdiction over Zicha. *See ICON Health & Fitness Inc. v. pro-forma.com*, No. CV-15-1981-PHX-SMM (BSB), 2017 WL 4797794 (D. Ariz. Sept. 12, 2017), report and recommendation adopted, 2017 WL 4779216 (D. Ariz. Oct. 23, 2017) (allowing *in rem* action to proceed where registrant of defendant domain names resided in Ukraine and had no ongoing business activities in the United States). Moreover, the lack of any commercial activity on the defendant domain name sites provides further evidence that personal jurisdiction is lacking. *See, e.g., Con-Way Inc. v. CONWAYRACING.COM*, No. 08-4263 SC, 2009 WL 2252128, at * 2 (N.D. Cal. July 28, 2009) (finding that "a passive website that merely provides links to other sites, but does not sell products within a forum is insufficient to confer jurisdiction."). Accordingly, the Court finds that it holds *in rem* jurisdiction over the <bein._> domain names in this action.

On May 31, 2018, Plaintiff's counsel emailed a copy of the complaint, docket sheet and several related documents to five different known email addresses for Zicha and the domain names. [Doc. No. 8.] The declaration attesting to service informs that Zicha received and responded to this email. [*Id.* at 3.] In addition to the email, hard copies of the documents were also sent to Zicha's known mailing address in the United Kingdom via FedEx and U.S. Mail. [*Id.*] The Court has not ordered any service through publication. Therefore, Plaintiff has completed service of process. *See* 15 U.S.C. §§

1125(d)(2)(A)(ii)(II)(aa)-(bb), 1125(d)(2)(B) ("[t]he actions under subparagraph (A)(ii) shall constitute service of process.").

### B. Cybersquatting Claim

The Anticybersquatting Consumer Protection Act provides a remedy for cybersquatting when "a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)). The Act provides that the owner of a mark may file an *in rem* action against a domain name, if the domain name violates any right of the mark registered in the Patent and Trademark Office or protected under 15. U.S.C. § 1125(a) or 1125(c), in the judicial district in which the name registrar or domain name registry is located. 15 U.S.C. § 1125(2)(d).

The elements of a cybersquatting claim as defined by the ACPA are (1) the registration, use, or trafficking in, a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark, (3) with a bad faith intent to profit from the mark. *See* 15 U.S.C. § 1125(d)(1)(A)[2]; *see also Bosley*, 403 F.3d at 680. Section 1125(d)(1)(B)(i) enumerates nine nonexclusive factors a court may consider in determining whether a registrant had a bad faith intent to profit from a plaintiff's mark.[3] Courts need not, however,

---

[2] The first subsection of the Act, § 1125(d)(1), not only defines the substantive elements of a cybersquatting claim, it also establishes the requirements for bringing an *in personam* action.

[3] The factors included but are not limited to: (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell or otherwise

march through the nine factors seriatim because the listed criteria are permissive and the ACPA allows for consideration of the unique circumstances of the case. *Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190, 1202 (9th Cir. 2009).

Here, Plaintiff alleged and established that it holds several U.S Trademarks to the word "BEIN" in different classes of goods and services (Reg. Nos. 4,665,444 and 5,332,353) as well as the stylized mark "beIN" (Reg. No. 5,263,217). [Doc. No. 5 at ¶¶ 15, 16, 17; Doc. No. 5-1 at 22-33.] Plaintiff also owns federally registered trademarks to "BEIN SPORT" (Reg. Nos. 5,070,475 and 5,066,623), "BEIN SPORTS" (Reg. No. 5,273,645), and "BEIN CONNECT" (Reg. No. 5,273,646). [Doc. No. 5 at ¶ 18; Doc. No. 18-3 at 18-29.] Plaintiff has attached to the complaint copies of the PTO certificates of registration of the BEIN and beIN trademarks. [Doc. Nos. 5-1 at 22-33.] Registration of a trademark with the PTO is prima facie evidence that the mark is distinctive and enforceable. *See Lahoti,* 586 F.3d at 1199 ("[F]ederal trademark of a particular mark supports the distinctiveness of that mark, because the PTO should not otherwise give it protection."). Plaintiff, beIn Media Group includes the beIN Sports television broadcast network, which provides exclusive access to prime sports competitions overseas and in the United States and it uses its BEIN Marks extensively to indicate the source of, and to promote, its global sports and entertainment services. [Doc. No. 5 at ¶¶ 6, 19.] Thus, the Court finds that Plaintiff has sufficiently alleged that its marks is distinctive.

---

assign the domain name to the mark owner or any third party for financial gain without having use, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c). 15 U.S.C § 1125(d)(1)(B)(i).

7

Further, it was alleged that the BEIN and beIN marks are used in the offending <bein._>domain names. Therefore the Court concludes the defendant <bein._>domain names are identical or confusing similar to Plaintiff's mark because they only differ from plaintiff's marks by the addition of a top level domain suffix "ae" "hk" "jp" or "xyx" or the generic word "work." *See Coca-Cola Co. v. Purdy,* 382 F.3d 774, 782 (8th Cir. 2004) (holding that if the only difference between defendant's domain names and plaintiff's marks is the addition of top level domain suffix, for example washingtonpost.cc, washingtonpost.ws, and pnis.org to the Washington Post and WPNI marks, the marks are confusingly similar); *DaimlerChrylsler,* 388 F.3d 206 ("courts have consistently found that slight differences between domain names and registered marks, such as the additional of minor or generic works to the disputed domain names are irrelevant.")

It also alleged that each of the offending <bein._>domain names are registered to Zicha, incorporate Plaintiff's trademarked name in its entirety, they do not contain any variation of Zicha's full name, Honza Jan Zicha. [Doc. No. 5 at 11.] Although it not clear that the <bein._> domain names have ever been used for any bona fide commercial or noncommercial uses, the FAC alleges the domain pages have no substantive uses, with some featuring the words "beIN.com will be back soon" and "something new and awesome coming soon." [*Id.* at ¶¶ 23, 25.] Finally, Zicha's offer to sell the <bein._>domain names to Plaintiff [*Id.* at ¶¶ 28, 30] is itself, "the hallmark of a violation of the ACPA and a criterion expressly identified by Congress as evidence of bad faith." *Bittorrent, Inc. v. Bittorrent Mktg. GMBH,* Case No. 12-cv-025250BLF, 2014 WL 5773197, at * (N.D. Cal. Nov. 5, 2014) (citing 15 U.S.C. § 1125(d)(1)(B)(i)(VI); *see also Lahoti,* 586 at 1203 (defendant offered to sell domain name to plaintiff for $72,500). Therefore, the Court finds these allegations sufficient for a finding of bad faith.

Therefore, accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged a substantive claim for cybersquatting under 15 U.S.C. § 1125(d).

**C. Default Judgment**

It is within the Court's discretion to enter default judgment following entry of default by the clerk. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The Ninth Circuit has identified seven factors for district courts to consider before entering default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.

In light of Defendants failure to respond to the Complaint, all of the allegations contained within it, aside from the amount of damages, are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Geddes* 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992).

Here, all factors weigh in favor of entering default judgment against Defendants. As discussed in more detail above, Plaintiff has successfully pled an ACPA claim. Accordingly, the second *Eitel* factor, the sufficiency of the complaint, weighs in favor of granting default. *Geddes*, 559 F.2d at 560; *Danny v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (the court must examine the complaint to determine whether plaintiff adequately pled a claim for relief).

As to the first factor, prejudice to beIN, by failing to respond to the complaint all the allegations in the complaint are admitted, thus, Plaintiff has no other means to obtain relief and Plaintiff will likely suffer prejudice without the grant of default judgment. *See., e.g., PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (If denial of default judgment will likely leave Plaintiff without recourse for recovery, such potential

prejudice to Plaintiff favors granting default). With respect to factor four, the sum of money at stake, Plaintiff is seeking $10,000 in statutory damages, costs in the amount of $765.20, and attorneys' fees in the amount of $7,363.13, for a total judgment of $18,128.33. *See, e.g., PepsiCo,* 238 F. Supp. 2d at 1176 (courts "consider the amount of money at stake in relation to the seriousness of Defendant's conduct."). The statutory damages provision under which Plaintiff is seeking damages provides that the Court may award "not less than $1,000 and not more than $100,000 per domain name," 15 U.S.C § 1117(d), therefore Plaintiff has limited the remedies it seeks and the sum of money at stake is not large.

Turning to the second and fifth factors, since Plaintiff has supported its factual allegations with ample evidence, and "defendant[s] ha[ve] made no attempt to challenge the accuracy of the allegations in the complaint," no factual dispute precludes entry of default judgment. *Landstar Ranger, Inc. v. Parth Enters.,* 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010). Concerning factor six, whether the default was due to excusable neglect, Defendants were properly served with the summons and FAC. [Doc. Nos. 6, 8.] Therefore, the default is not due to excusable neglect. *See e.g., Craigslist, Inc. v. Kerbel,* No. 11-3309, 2012 WL 3166798 (N.D. Cal. Aug 2, 2012) (defendant's default was unlikely due to excusable neglect considering fact that "Plaintiffs served not only the summons and complaint but also the request for entry of default on Defendant but still received no response"). Finally, in regard to factor seven, the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits, Defendants have failed to file or answer or otherwise respond to the Complaint, but this does not preclude the Court from entering default judgment against them. *PepsiCo*, 238 F. Supp. 2d at 1177. ("Defendant[s'] failure to answer Plaintiff['s] Complaint makes a decision on the merits impractical, if not impossible.") Thus, all the additional *Eitel* factors weighs in favor of entry of default judgment

In light of the above, the Court **GRANTS** Plaintiff's motion for default judgment.

**D. RELIEF SOUGHT**

Plaintiff asks for $10,000 in statutory damages, costs in the amount of $765.20, and reasonable attorneys' fees in the amount of $7,363.13, for a total judgment of $18,128.33.

### 1. Damages and Injunctive Relief

Plaintiff not only seek entry of judgment that they are the rightful owners of the domain names at issue, including the defendant domain names the court previously ordered the registrar to transfer to Plaintiff [Doc. No. 11], they also request the Court order Zicha to pay Plaintiff $10,000 in statutory damages for the five domain names at issue, pursuant to 15 U.S.C. § 1125(d)(3) and § 1117(d). Plaintiff requests the statutory damages because of Zicha's bad faith conduct.

Section § 1117(d) of the Lanham Act provides:

> [i]n a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

15 U.S.C. § 1117(d).

Under the *in rem* provision of the ACPA, the remedies available for cybersquatting are "limited to a court order for the forfeiture of cancellation of the domain name or the transfer of the domain name to the owners of the mark." 15 U.S.C § 1125(d)(2)(D)(i); *Harrods Ltd v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Forfeiture, cancellation and transfer of domain names are the only remedies available under [§ 1125(d)(2)(D)(i)]'s *in rem* provision"). Furthermore, under Rule 54(c), "[a] default judgment must not different in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P 54(c).

Here, the action was brought in rem against the domain names and the prayer for relief in the FAC is limited to requests for injunctive relief in the form of an order transferring the <bein._>domain names immediately and without reservation to Plaintiff. [Doc. No. 5 at 12.] Thus, to award statutory damages would not only exceed the relief

demanded in the FAC, it is a remedy expressly not authorized in in rem cases. Moreover, the Court does not think it appropriate to award damages against Zicha, an individual not named as a defendant in this case. Accordingly, the Court declines to award statutory damages.[4]

### 2. Attorneys' Fees and Costs.

Plaintiff seeks attorneys' fees and costs against Defendants. Plaintiff asserts that an award of attorneys' fees is warranted primarily because of Zicha's conduct before and during this litigation and his unwillingness to settle this case.

When a violation of 15 U.S.C. § 1125(d) has been established, the plaintiff is entitled to recover costs. In order to award attorney's fees under the Lanham Act, this Court must find that this is an "exceptional case." 15 U.S.C. § 1117(a). "[A]n 'exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exception' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2016).

Considering the totality of the circumstances, the Court does not consider this case warrants an exceptional case finding. In fact, "it would be illogical to find that a failure to appear in an in rem proceeding under the ACPA may form an independent basis for an award of attorney's fees under the Lanham Act – to do so would convert all unanswered ACPA claims (which are in no way exceptional) into 'exceptional' cases." *United Air Lines, Inc. v. unitedair.com,* Civil Action No. 1:12CV0143 (GBL/JFA), 2012 WL 2838629, at *7 (E.D. Va. June 11, 2012) (Anderson, J, United States Magistrate Judge).

---

[4] In so finding, the Court is aware that the rights and remedies available under the in rem jurisdiction established under the Act are in addition to, not in lieu of, any other civil action or remedy. 15 U.S.C. § 1125(d)(3).

Accordingly, the Court exercises its discretion and denies Plaintiff's request for attorneys' fees. The request for costs is also denied, because it is a remedy expressly not authorized in in rem cases, the Court is unwilling to hold Zicha liable for them, and to award them against the defendant domain names would be futile.

**E. DISPOSITION**

Consistent with the foregoing discussion, the Court hereby **ORDERS** as follows:

(1) Plaintiff's motion for default judgment is **GRANTED**;

(2) Plaintiff, as the rightful owner of the "beIN" and "BEIN" marks, is the rightful owner of the Domain Names at issue, including the Defendant Domain Names;

(3) Plaintiff's request for statutory damages in the amount of $10,000 is **DENIED**;

(4) Plaintiff's request for attorneys' fees in the amount of $7,363.13 is **DENIED**; and

(5) Plaintiff's request for costs in the amount of $765.20 is **DENIED**.

The Clerk of the Court shall enter **JUDGMENT** in favor of Plaintiff beIN Media Group LLC.

It is **SO ORDERED**.

Dated: March 11, 2019

Hon. Cathy Ann Bencivengo
United States District Judge